UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIO TINGLING,                                  :

                       Petitioner,             :         07 Civ. 1833 (RMB) (DF)

     -against-                                       :         **REPORT AND**
                                                                   **RECOMMENDATION**
JOHN J. DONELLI,                                 :

                       Respondent.            :
------------------------------------------------------------X

**TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:**

*Pro se* petitioner Mario Tingling ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, following his November 12, 2003 state conviction. Upon a jury verdict after a trial in the Supreme Court of the State of New York, New York County, Petitioner was found guilty of Promoting Prostitution in the Second Degree, in violation of New York Penal Law § 230.30(2), and Endangering the Welfare of a Child, in violation of New York Penal Law § 260.10(1). Petitioner was sentenced to concurrent terms of seven-and-one-half to 15 years for the promoting prostitution count, and one year for the child endangerment count. He is currently incarcerated in the Mid-Orange Correctional Facility in Warwick, New York.[1]

Petitioner claims that he is entitled to habeas relief on the ground that his due process rights under the 14th Amendment were violated when the trial judge admitted evidence of uncharged crimes. (*See* Petition Under § 2254 for a Writ of Habeas Corpus by a Person in State Custody, dated Feb. 6, 2007 ("Pet.") (Dkt. 2), at ¶ 13.) For the reasons set forth below, I recommend that the petition be dismissed.

---

[1] Petitioner was apparently incarcerated in the Bare Hill Correctional Facility in Malone, New York at the time he filed the petition.

## FACTUAL BACKGROUND

According to the testimony presented by the prosecution at trial, in August of 2002, Presstine Baldwin ("Baldwin"), who was 15 years old at the time, moved out of her mother's apartment and began living with Petitioner and several other girls in Petitioner's apartment in Brooklyn. (Transcript of trial, dated Oct. 2, 2003 ("Tr."), at 30-32.) Some of the other girls in the apartment were nicknamed Coffee, Seduce and China; the girls gave Baldwin the nickname "Heaven." (*Id*. at 32-33.) Petitioner took Baldwin and the other girls to a strip club where they danced for money, which they gave to Petitioner. (*Id*. at 36-45.) On three separate occasions, Petitioner also drove Baldwin and the other girls to Manhattan, where they worked as prostitutes. (*Id*. at 45-54.) On one of these occasions, Baldwin performed oral sex on a man for $50, which she gave to Petitioner because she "worked for him." (*Id*. at 51-54.)

On October 15, 2002, Petitioner drove Baldwin to Manhattan again, gave her three dollars, and instructed her to call him when she was done. (*Id*. at 55-56.) At approximately 2:00 a.m., at 46th Street and Tenth Avenue, Baldwin agreed to have sex with a man in exchange for $100 and got into his car. (*Id*. at 56, 91-93.) The man in the car was Brendon Leddy ("Leddy"), an undercover police officer. (*Id*. at 92.)

After driving a short distance in the car with the undercover police officer, Baldwin was arrested. (*Id*. at 94.) Baldwin told the police that she was 15 years old and that she had been driven to Manhattan by her "brother." (*Id*. at 58, 98.) Baldwin agreed to take the police to where her "brother" was waiting for her, and she led the police to West 48th Street and Tenth Avenue, where Petitioner was sitting in a white jeep. (*Id*. at 58, 98-100.) After inspecting Petitioner's identification, Detective Carl Martello ("Martello") questioned Baldwin about why

her "brother" had a different last name, and Baldwin admitted that Petitioner was actually her "pimp." (*Id*. at 100-03.)

Petitioner was then placed under arrest. (*Id*. at 103.) The police searched Petitioner and recovered $529 in cash (including $74 in one-dollar bills) and a small notebook that contained the names China, Lady, Tina, Seduce, Baby and Heaven, with numbers next to each name. (*Id*. at 103-06.)

## **PROCEDURAL HISTORY**

### A. **Indictment**

On October 29, 2002, Petitioner was indicted in New York County for Promoting Prostitution in the Second Degree, in violation of New York Penal Law § 230.30(2) and Endangering the Welfare of a Child, in violation of New York Penal Law § 260.10(1).

### B. *Molineux* **Hearing**

On September 29, 2003, the Honorable John A. K. Bradley, J.S.C., conducted a *Molineux* hearing in New York County Supreme Court.[2] During the hearing, the prosecution requested that the court permit it to introduce evidence at trial regarding the "background of the history of the relationship" between Petitioner and Baldwin. (Transcript of hearing, dated Sept. 29, 2003 ("Hearing Tr."), at 50.) Specifically, the prosecution requested that it be permitted to elicit testimony that Petitioner had taken Baldwin to dance at strip clubs, that he had taken her to

---

[2] *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901), set forth the rule that evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *See Molineux*, 168 N.Y. at 293; *see also Sierra v. Burge*, No. 06 Civ. 14432 (DC), 2007 U.S. Dist. LEXIS 91132, at *16-17 (S.D.N.Y. Nov. 30, 2007) (trial court's admission of evidence pursuant to *Molineux* was not erroneous where testimony was relevant to show the chain of events that led up to and motivated the assault).

3

prostitute herself on three occasions other than on the date when she was arrested, and about the other girls that lived in the apartment with Baldwin and Petitioner. (*Id*. at 50-61.) The prosecutor argued that such "background" information was relevant to show that Petitioner "knowingly advanced and profited from prostitution," as required by the statute (*id*. at 57), and was necessary so that Baldwin's testimony about the events of October 15, 2002 would "make . . . sense to the jury" (*id*. at 52).

Petitioner's counsel, on the other hand, argued that the prosecution's request was just an attempt to "bolster [Baldwin's] credibility . . . because this case is based upon one person, her." (*Id*. at 55.) Counsel argued that admission of the testimony would cause "terrible prejudice" to Petitioner because it would suggest to the jury that Petitioner was "running a prostitution ring." (*Id*. at 55-56.)

The judge, however, granted the prosecution's motion, stating:

> I will allow you to bring in the four trips to Manhattan and also the strip club, but no more than . . . that he provided the clothes, she took them off in the club and gave [him] the money. . . . [A]s to the other girls, I will allow you to bring out that girls hav[ing] those names lived in the same building, without bringing out anything concerning their activities.

(*Id*. at 61-62.) At trial, the prosecution elicited testimony from Baldwin within the parameters set by the judge.

### C. **Trial and Sentence**

Petitioner's trial began on October 2, 2003. (Tr. at 2.) The prosecution's case consisted of testimony from Baldwin and two police officers who had participated in the arrest of Baldwin and Petitioner, officers Leddy and Martello. In addition, the prosecutor offered Baldwin's birth certificate into evidence, to show that she had been 15 years old at the time of the events in

4

question, and read from Petitioner's grand jury testimony. (*Id.* at 110-11.) Petitioner did not take the stand or introduce any evidence at trial. (*See id.* at 133.)

During jury deliberations, the jury sent out a note inquiring if it could "consider other events on other dates" when deciding whether Petitioner was guilty of the crimes charged. (*Id.* at 217.) In response to the note, the judge instructed the jury:

> [W]hat you have to do is decide whether or not the People have proved the guilt of the defendant beyond a reasonable doubt of the two crimes charged on October 15, 2002. You may consider the other evidence as to other dates both in determining whether the People have proved the guilt of the defendant beyond a reasonable doubt or, conversely, whether they have failed to prove the guilt of the defendant beyond a reasonable doubt.

(*Id.* at 217.) Petitioner's counsel did not object to this instruction. (*Id.* at 216.)

On October 7, 2002, the jury found Petitioner guilty of both charges. (*Id.* at 219.) On November 12, 2003, the court found Petitioner to be a second felony offender and sentenced him to an indeterminate term of imprisonment of seven-and-one-half to 15 years for promoting prostitution and a concurrent term of one year for endangering the welfare of a child. (Sentencing Transcript, dated Nov. 12, 2003, at 2-5, 10-11.)

### D. Direct Appeal

Petitioner appealed his conviction to the Appellate Division, First Department. Petitioner's sole ground of appeal was that "[t]he admission into evidence of uncharged crimes, including [his] alleged profiting from women who danced in strip clubs and worked as prostitutes, was unduly prejudicial because [he] was charged with an isolated incident of promoting prostitution." (Pet. at ¶ 10.) According to Petitioner's appellate brief,

> [a]lthough the main issue in dispute in this case was whether [Petitioner] knowingly advanced and profited from Baldwin's

> prostitution on October 15, 2002, the jury heard detailed and
> explicit acts of Baldwin's strip dancing and prostitution on several
> occasions between August 2002 and October 15, 2002. . . . [T]he
> resulting prejudice to [Petitioner] from such testimony far
> outweighed what minimal probative value it may have had. . . .
> As a result, [Petitioner] was deprived of his right to a fair trial and
> due process.

(Declaration of Jodi A. Danzig in Opposition to the Petition for a Writ of Habeas Corpus, dated June 12, 2007 ("Danzig Decl.") (Dkt. 6), Ex. A, at 15-16.) Petitioner further argued on appeal that such evidence was inadmissible "propensity evidence" (*id.* at 16-17) that "could only have been intended to demonstrate that [Petitioner] was operating a prostitution ring" (*id.* at 23), a crime of which Petitioner had not been charged.

In opposition to the appeal, the People argued that "[t]he evidence of Baldwin's prior acts at the strip club, of Baldwin's acts of prostitution, and the names of the other girls living in [Petitioner's] apartment were properly admitted to prove that [Petitioner] knowingly promoted prostitution and endangered the welfare of a child" (Danzig Decl., Ex. B, at 19 (Brief for Respondent, dated Aug. 2005)), given that "[Petitioner's] theory of his defense was that he knew nothing about Baldwin's activities" (*id.* at 19).

On September 29, 2005, the Appellate Division affirmed Petitioner's conviction. *People v. Tingling,* 21 A.D.3d 857, 857-58 (1st Dep't 2005). In doing so, the Appellate Division concluded that

> [t]he court properly exercised its discretion in admitting the
> uncharged crimes evidence challenged by [Petitioner] on appeal
> since it went directly to the issue of whether [Petitioner]
> knowingly advanced or profited from prostitution, as required by
> Penal Law § 230.30. We do not find this evidence to be
> cumulative or unduly prejudicial.

*Id.*, 21 A.D.3d at 857-58.

6

Petitioner subsequently sought further review from the New York Court of Appeals. (Pet. at ¶ 10.) In his letter to the Court of Appeals, Petitioner presented the same issue that he raised before the Appellate Division, and he enclosed a copy of his appellate brief. (*See* Danzig Decl. at Ex. D (Letter to the Court of Appeals, dated Oct. 13, 2005).) On November 28, 2005, the Court of Appeals denied leave to appeal. *See People v. Tingling*, 5 N.Y.3d 885 (2005).

### E. The Habeas Petition

Petitioner timely filed the present Petition for a Writ of Habeas Corpus on February 6, 2007.[3] (*See* Pet.) The Petition, liberally construed,[4] asserts one cognizable ground for habeas relief. Petitioner claims that his due process rights under the 14th Amendment were violated because "[t]he admission into evidence of uncharged crimes, including [his] alleged profiting from women who danced in strip clubs and worked as prostitutes, was unduly prejudicial because [he] was charged with an isolated incident of promoting prostitution." (Pet. at ¶ 13.)[5]

---

[3] Although the Court's docket reflects a filing date of March 2, 2007 (*see* Dkt. 2), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and this Court will therefore deem the petition to have been filed on February 6, 2007, the date when Petitioner signed the petition. The petition is thus timely, as it should be considered to have been filed within one year of the date (February 26, 2006) when Petitioner's conviction became final for purposes of habeas review, *i.e.,* 90 days after the Court of Appeals denied Petitioner's application for leave to appeal. 28 U.S.C. § 2244(d)(1)(A) (2000).

[4] *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The complaint of a *pro se* litigant is to be liberally construed in his favor.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (where a petitioner is proceeding *pro se* and "lack[s] expertise," the Court "should review [his] habeas petition[] with a lenient eye").

[5] Petitioner also appears to allege that his rights under the New York State Constitution were violated. Such a claim, however, would not be not cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 68 (1991) ("federal habeas corpus relief does not lie for errors of state law.").

7

Respondent opposed the Petition on June 12, 2007, on the grounds that "[t]he Appellate Division's rejection of Petitioner's uncharged-crimes claim was neither contrary to nor an unreasonable application of supreme court law[,] and any error by the trial court was harmless." (Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated June 12, 2007 ("Resp. Mem.") (Dkt. 7), at 10.)

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Exhaustion

A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged violations of . . . [the] prisoners' federal rights." *Picard*, 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Id.* at 278 (citation omitted). The state courts, however, must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)) (alteration in original). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), by presenting their claims in a fashion demonstrating either

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194; *accord Jackson v. Edwards*, 404 F.3d 612, 618-19 (2d Cir. 2005); *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing *Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990)), *cert. denied*, 514 U.S. 1054 (1995).

### B. Standard of Review

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result.[6] *Williams*, 529 U.S. at 405-06. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409).

---

[6] The Supreme Court has emphasized that "clearly established Federal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id.* (citing *Musladin*).

## II. PETITIONER'S CLAIM

Petitioner claims that his rights under the Due Process Clause of the 14th Amendment were violated when the trial court permitted the prosecution to elicit testimony regarding crimes for which Petition was not charged. (Pet. at ¶ 13.) This claim has been exhausted because Petitioner raised it in constitutional terms on his direct appeal to the Appellate Division and subsequently presented it to the New York Court of Appeals, the highest state court. As the Appellate Division adjudicated the claim on the merits, its determination is subject to review under the deferential standard set forth in AEDPA. *See* 28 U.S.C. § 2254(d).

"[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967). In order to find a denial of due process, a court must find that an absence of "fundamental fairness . . . fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941). As, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," *Estelle,* 502 U.S. at 67-68 (citation omitted), a petitioner cannot prevail merely by showing that the trial court erred in admitting evidence that, under state law, should have been excluded. "Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973); *see also Daniel v. Conway*, 498 F. Supp. 2d 673, 682 (S.D.N.Y. 2007) ("[G]enerally,

rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation.").

In the context of the present case, "[a] decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under *Molineux* constitutes an evidentiary ruling based on state law." *Sierra v. Burge*, No. 06 Civ. 14432 (DC), 2007 U.S. Dist. LEXIS 91132, at *14-15 (S.D.N.Y. Nov. 30, 2007) (citation omitted); *accord Jones v. Conway*, 442 F. Supp. 2d 113, 130-131 (S.D.N.Y. 2006); *see also Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of a constitutional violation . . . because *Molineux* is a state law issue.") (citations omitted)).

"For the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)). "In short it must have been 'crucial, critical, [or] highly significant.'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)). Further, in assessing materiality, the court must view the evidence "objectively in light of the entire record before the jury." *Collins*, 755 F.2d at 19. "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." *Dunnigan*, 137 F.3d at 125 (quoting *Estelle*, 502 U.S. at 69).

In this case, a review of the entire record shows that the trial court's ruling allowing the prosecution to elicit testimony regarding "uncharged crimes" was not improper under *Molineux*. The testimony about the uncharged crimes was relevant to an essential element of the charge

12

against Petitioner – specifically, his knowledge that Baldwin was working as a prostitute. (*See* Tr. at 202; *see also* N.Y. Penal L. § 230.30(2) ("A person is guilty of promoting prostitution in the second degree when he *knowingly* . . . [a]dvances or profits from prostitution of a person less than sixteen years old." (emphasis added)).)  In his opening statement, Petitioner's counsel did not contest that Baldwin was working as a prostitute when she was arrested (Tr. at 22-23), but argued that "there is simply no evidence that [Petitioner] *knew* that [Baldwin] was engaged in prostitution" (*id.* at 24) (emphasis added).  The evidence of other incidents in which Petitioner had taken Baldwin to strip and to work as a prostitute in the past, as well as evidence about the other girls who lived in Petitioner's apartment, was relevant to show that, despite his denials, Petitioner knew what Baldwin was doing in Manhattan while he waited nearby in the jeep.

Furthermore, even if the challenged evidence was admitted erroneously, it cannot be deemed "sufficiently substantial, significant or crucial . . . to have denied [Petitioner] the fundamentally fair trial required by the Due Process clause." *Collins*, 755 F.2d at 19.  The evidence was not sufficiently material to have provided an independent basis for Petitioner's conviction; in other words, evidence of the other acts did not compel the conclusion that Petitioner had committed a crime on October 15, 2002.  Moreover, in light of the other strong evidence of Petitioner's guilt, including testimony that, shortly after she agreed to have sex with the undercover officer in exchange for $100, Baldwin led the police to the place where Petitioner was waiting and identified him as her "pimp" (Tr. at 103), Petitioner has not shown that the admitted evidence removed a reasonable doubt that otherwise would have existed.  *See Collins*, 755 F.2d at 19 (finding that admitted evidence was not sufficiently material to violate due process where it "did not directly attribute to [the defendant] the commission of the crime

13

charged" and where other "properly admitted evidence against [the defendant] was very strong"); *see also Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (finding that admitted evidence was not sufficiently material to violate due process where "apart from the challenged evidence . . . , the prosecution presented highly probative evidence of [the defendant's] guilt").

Finally, it should be stressed that, under *Musladin*, the question of whether a state court's decision is contrary to, or an unreasonable application of federal law, 28 U.S.C. § 2254(d), must be based on the explicit holdings of the Supreme Court, and not its dicta, *see Musladin,* 127 S. Ct. at 653; *see also* n.6, *supra*. Not only would Petitioner's claim fail if analyzed under the Second Circuit precedent cited above, but, under AEDPA, it would also fail based on the test of *Musladin*, as the Supreme Court has not directly held that due process is violated by the introduction at trial of evidence of a defendant's uncharged crimes. *See Jones v. Conway*, 442 F. Supp. 2d 113, 130-131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law."). Certainly, under all the circumstances presented here, it cannot be said that the Appellate Division's rejection of Petitioner's claim was either contrary to, or an unreasonable application of federal law. Accordingly, under the deferential AEDPA standard of review, Petitioner's claim should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, I recommend that the petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of

appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States Courthouse, 500 Pearl Street, Room 650, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
September 2, 2008

Respectfully submitted,

*Debra Freeman*
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Mr. Mario Tingling, *pro se*
04-A-0714
Bare Hill Correctional Facility
Box 20
181 Brand Road
Malone, NY 12953

Jodi A. Danzig, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271